IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Arthur Brewington, | ) | C/A No. 0:19-2903-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Don Reynolds, *in his capacity as Sheriff of Laurens County*; Laurens County Sheriff's Office; Corporal John Przybylo; Sergeant Corey Matthew Barnes, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

The plaintiff, Arthur Brewington, a state prisoner who is represented by counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Laurens County law enforcement defendants.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 24.) Brewington filed a response in opposition (ECF No. 29), and the defendants replied (ECF No. 35). The court heard oral argument on the motion on December 14, 2021. (ECF No. 52.) Having reviewed the parties' submissions, arguments at the hearing, and the applicable law, the court recommends that the defendants' motion be granted as to Brewington's federal claims, and that the state law claims be remanded.

## BACKGROUND

The following facts are taken in the light most favorable to Brewington, to the extent they find support in the record. This case arises out of Brewington's arrest and detention in the Laurens County Detention Center on March 5, 2018. During the intake process at the detention center,

---

[1] The defendants removed this action from the Laurens County Court of Common Pleas.

Brewington was intoxicated and made aggressive statements to Cpl. Przybylo. While in the holding cell, Brewington was observed bothering other inmates and provoking an argument with another detainee. Although Cpl. Przybylo removed the other inmate from the holding cell, Brewington and the other inmate continued to yell and curse at each other. Cpl. Przybylo and Sgt. Barnes entered the holding cell and attempted to calm Brewington down, but Brewington refused and began punching the cell window separating him and the other inmate. It was decided that Brewington should be removed from the holding cell and placed in a more secure cell by himself until he was sober and calm.

Cpl. Przybylo and Sgt. Barnes again entered the holding cell and attempted to handcuff Brewington, who mildly resisted until the officers placed him against the wall and were able to handcuff him. However, as the officers attempted to escort Brewington from the holding cell, Brewington pulled away. At this point, Cpl. Przybylo performed a leg sweep maneuver, and Sgt. Barnes assisted him in taking Brewington down to the concrete floor, which resulted in Brewington fracturing his C-6 and C-7 vertebrae.

Although Brewington provides deposition testimony that he did not resist the officers, videotape evidence of the incident provided by the defendants belies Brewington's statements.[2] Rather, the videotape evidence shows Brewington pulling away from the officers as they attempt to escort him out of the holding cell. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

---

[2] Notably, during the same deposition, Brewington repeatedly testified that he was not able to clearly remember what happened during the incident. (See, e.g., Brewington Dep. 77-78, 84, 86, 88, ECF No. 35-3 at 4-5, 8, 10, 12.)

In his Complaint, Brewington raises claims of excessive force and deliberate indifference in violation of the Fourth and Fourteenth Amendments,[3] as well as state law claims of negligence and gross negligence. He seeks monetary damages.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

---

[3] At oral argument, the parties conceded that a pretrial detainee's claims of excessive force are governed under the Fourteenth Amendment. See Kingsley v. Hendrickson, 576 U.S. 389 (2015)

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

B.     **Defendants' Motion for Summary Judgment**

   1.     **Excessive Force and Qualified Immunity**

Brewington claims that Defendants Przybylo and Barnes used excessive force against him when they attempted to remove Brewington from the holding cell. During the motion hearing, counsel for the defendants argued that the correctional officers were entitled to qualified immunity as to Brewington's excessive force claim because at the time of the incident, it was not clearly established that force used to take Brewington to the ground—specifically a leg sweep maneuver on a handcuffed, resisting pretrial detainee—was unlawful. The court agrees.

Under the defense of qualified immunity, "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 235, 242.

In determining whether the right violated was clearly established, the court must define the right "in light of the specific context of the case, not as a broad general proposition." Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation marks omitted). Moreover,

> [a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (first alteration added); see also White v. Pauly, 137 S. Ct. 548, 551-52 (2017) (same); cf. City of Escondido v. Emmons, 139 S. Ct. 500 (2019) (reversing the United States Court of Appeals for the Ninth Circuit for defining the right too generally when it simply noted that "[t]he right to be free of excessive force was clearly established at the time of the events in question"). This specificity is especially important in the context of excessive force claims where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (alteration in original). In analyzing this prong, a court in this district must first look to case law from the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court, and in the absence of binding authority, the court must next consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 543 (4th Cir. 2017). The "salient question" " 'is whether the state of the law'

at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' " Tolan v. Cotton, 572 U.S. 650, 656 (2014) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)) (alteration in original). Stated differently, a defendant who has violated a plaintiff's constitutional rights is "shielded from liability . . . if an objectively reasonable officer could have believed that his actions were lawful in light of clearly established law." Brooks v. Johnson, 924 F.3d 104, 118 (4th Cir. 2019) (quoting Cox v. Quinn, 828 F.3d 227, 238 (4th Cir. 2016)).

"When a court addresses qualified immunity in the summary judgment context, it can condense its analysis." Pittman v. Nelms, 87 F.3d 116, 119 (4th Cir. 1996). In this context, the court can combine the two prongs of the qualified immunity inquiry by asking whether "the plaintiff has 'alleg[ed] the violation of a *clearly established* constitutional right.' " Id. (quoting Siegert v. Gilley, 500 U.S. 226, 231 (1991)) (alteration in original). If so, the court must then determine whether the defendant knew or should have known that his conduct was illegal. Id. (citing DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995)). The Fourth Circuit has described this inquiry as whether "a reasonable official would understand that what he is doing violates" the Constitution. Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) (quoting Saucier, 533 U.S. at 202). "Although the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)).

An examination of clearly established excessive force jurisprudence is instructive in resolving this motion. As Brewington was a pretrial detainee at the time of the events raised in his Complaint, the Due Process Clause of the Fourteenth Amendment—which "protects a pretrial

detainee from the use of excessive force that amounts to punishment"—governs this claim. Kingsley v. Hendrickson, 576 U.S. 389, 405 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). "[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one," and "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," regardless of the officer's state of mind. Id. at 397. In determining whether the force was objectively unreasonable, the court must consider the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). "A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (citing Bell v. Wolfish, 441 U.S. 520, 540 (1979) (internal quotation marks and alterations omitted). Importantly, "objective reasonableness turns on the " 'facts and circumstances of each particular case,' " including many considerations that may bear on the reasonableness or unreasonableness of the force used, such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. (quoting Graham, 490 U.S. at 396).

At the hearing, counsel for the defendants argued that a reasonable officer would not have understood that the takedown technique used to subdue Brewington was unreasonable and that the defendants are therefore entitled to qualified immunity. Viewing the evidence in the light most favorable to Brewington, the court concludes that the law in March 2018 did not give fair warning

such that the defendants knew or should have known that their conduct—performing a leg sweep maneuver on a handcuffed but resisting pretrial detainee—would violate the Constitution.

Counsel for Brewington argues that the cases of Thompson v. Commonwealth of Virginia, 878 F.3d 89 (4th Cir. 2017), and Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003), provided clearly established law using similar standards under the Fourth and Eighth Amendments such that the defendants would have been aware that their actions were unconstitutional, but counsel conceded these cases were not exactly on point. The court finds these cases to be distinguishable.

In Thompson, a prisoner raised Eighth Amendment claims against two correctional officers after he was injured during transport by vehicle. Specifically, Thompson alleged that the officers would not secure him in a seatbelt even after he requested such, drove erratically during transport causing Thompson to be thrown around in the van, failed to take any action when Thompson requested that they slow down and informed them that he had been injured, and laughed and taunted him, all allegedly in retaliation for Thompson's filing grievances. In determining that the defendants were not entitled to qualified immunity, the Thompson Court first concluded that the defendants had maliciously used force against Thompson in violation of the Eighth Amendment. The Court further held that "prisoners have a right not to be assaulted by their captors," and that "the right to be free from malicious or penologically unjustified infliction of pain and suffering" was clearly established on the date of the incident. Thompson, 878 F.3d at 102. The Court further stated that "[t]his principle applies with particular force when inmates have not engaged in wrongdoing, are restrained and compliant and posing no physical threat" and that a reasonable officer would have known that the Eighth Amendment "prohibits such malicious acts of violence or intentional endangerment." Id.

In Brewington's case, the subjective component—which was the focus of Thompson's Eighth Amendment claim—is not applicable. Thus, the Thompson Court's determination that the prohibition of *malicious* acts by corrections officers against prisoners was clearly established does not similarly put the defendants in Brewington's case on notice that a takedown maneuver on a resisting (albeit handcuffed) pretrial detainee would constitute excessive force. See Ashcroft v. al-Kidd, 563 U.S. at 741 ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate.").

Counsel for Brewington also relied on Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003), in arguing that the defendants are not entitled to qualified immunity. Jones had voluntarily come to the sheriff's office to sober up and because he was possibly suicidal, and at the time of the incident Jones was handcuffed, unarmed, and in a secured processing room by himself. Jones was shouting and using aggressive language, however, and because the processing room needed to be used by others, the deputy sheriff entered the processing room to either quiet Jones down or move him to a different location. When Jones began to stand up from his chair, the deputy sheriff knocked Jones—an individual who was not under arrest, armed, or suspected of any crime—to the floor and jumped on him, causing injury to Jones's nose, lips, mouth, and ribs. The Jones Court held that Deputy Keller violated Jones's Fourth Amendment right to be free from unreasonable seizures, which bars an officer from using excessive force to seize a free citizen. Jones, 325 F.3d at 527. The Jones Court analyzed the deputy's actions under the Fourth Amendment standard of "objective reasonableness," which is substantially similar to the analysis required under the Fourteenth Amendment. See Kingsley, 576 U.S. at 397 (citing Graham, 490 U.S. at 396).

Brewington's case is distinguishable from Jones because, even setting aside Brewington's status as a detainee, Brewington had minutes earlier acted aggressively toward another detainee,

which required the officers to separate them; had been physically violent by repeatedly punching the window; was a potential threat to another detainee in the holding cell; and was resisting the officers' attempts to handcuff and escort Brewington from the holding cell. Thus, the Jones Court's holding that "it was clearly established that a police officer was not entitled to use unnecessary, gratuitous, and disproportionate force against a handcuffed, secured citizen, who posed no threat to the officer or others and had neither committed, nor was suspected of committing, any crime" is simply not similar enough to put the defendants here on notice that their take-down maneuver on a resisting detainee violated the Constitution. Jones, 325 F.3d 534; see also Mullenix, 577 U.S. at 12 (holding that the specific context of the case is especially important when analyzing an excessive force claim).

A take-down maneuver on a restrained pretrial detainee similar to that used on Brewington was discussed in Wernert v. Green, 419 F. App'x 337 (4th Cir. 2011). In Wernert, a pretrial detainee who was handcuffed was asked by one of the arresting deputies to remove his belt and shoes. When Wernert kicked off his second shoe, it "flipped up" and hit one of the deputies in the face. Id. at 338. Wernert quickly apologized, but Deputy Greene used an "escort takedown" maneuver to bring Wernert to the concrete floor, causing extensive injuries to Wernert. Id. at 338, 341. The Wernert Court affirmed the district court's conclusion that Deputy Greene was not entitled to qualified immunity because the deputy's "use of force against Wernert, who was already restrained and posed little possibility of harm to the officers, was not objectively reasonable and contravened clearly established law." Id. at 342. However, as argued by defense counsel in the instant case during the December 14, 2021 hearing, the Wernert case alone is insufficient to put Defendants Przybylo and Barnes on notice that the takedown maneuver used on Brewington violated the Constitution because Wernert is an unpublished case. See Booker v. S.C. Dep't Corr.,

855 F.3d 533, 543 (4th Cir. 2017) ("[B]ecause . . . unpublished opinions are not even regarded as binding precedent in our circuit, . . . they cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity.") (internal quotation marks omitted).  Additionally, Wernert was decided many years prior to the opinion in Kingsley v. Hendrickson, and while Wernert did consider the objective reasonableness of Deputy Greene's actions, it also found that, subjectively, the force applied by Deputy Greene was not in good faith, but rather, that he may have acted in a retaliatory manner. Wernert, 419 F. App'x at 342.  Moreover, Wernert was decided prior to the opinions of Ashcroft v. al-Kidd and Mullenix v. Luna, which have further emphasized that a finding that an officer has violated clearly established law must be specific to the context of the case at bar—especially when the claim is that of excessive force.  See Ashcroft v. al-Kidd, 563 U.S. at 741; Mullenix, 577 U.S. at 12.  Thus, the court agrees with defense counsel's oral argument that Wernert alone is insufficient to put the Brewington defendants on notice that their actions violated the Constitution (assuming without deciding that a violation occurred).

Accordingly, the caselaw discussed during oral argument, as summarized above, is insufficient to show that clearly established law at the time of the events at issue put the defendants on notice that the leg sweep maneuver used on Brewington in the circumstances presented in this case constituted excessive force.  Consequently, the defendants are entitled to qualified immunity because the right purportedly violated was not clearly established.

    **2.**    **State Law Claims**

In light of the recommendation that the defendants' motion for summary judgment be granted as to Brewington's federal claims, the court should exercise its discretion to remand the state law claims to the Laurens County Court of Common Pleas.  See 28 U.S.C. § 1367(c)

(authorizing a district court to decline to exercise jurisdiction over a supplemental claim); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988) (discussing the factors in deciding whether to exercise supplemental jurisdiction after removal). Here, Brewington raises several state law claims that, in the interest of comity, are more appropriate for consideration in South Carolina's courts because they include complex issues of state law. See 28 U.S.C. § 1367(c) (listing bases for declining supplemental jurisdiction, including the presence of novel or complex issues of state law and the dismissal of federal claims); Hinson v. Nw. Fin. S.C, Inc., 239 F.3d 611, 617 (4th Cir. 2001) (finding the district court did not abuse its discretion to remand the case to state court where the federal claims were no longer at issue, the state claims predominated, and the state claims involved interpretations of complex state statutes on which there was no state precedent).

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendants' motion for summary judgment be granted as to Brewington's federal claims because the defendants are entitled to qualified immunity. It is further recommended that Brewington's state law claims be remanded to the Laurens County Court of Common Pleas.

January 25, 2022
Columbia, South Carolina

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).